**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSEALIND RANGEL, | No. 2:13-cv-0228-JAM-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 19), defendant's cross-motion for summary judgment (Doc. 23), and plaintiff's reply (Doc. 26). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits with a protective filing date of October 30, 2008, alleging an onset of disability on September 1, 2007, due to disabilities including arthritis, back pain, kidney stones and diabetes. (Certified administrative record ("CAR") 76-79, 134-38, 158-63, ). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on March 30, 2010, before Administrative Law Judge ("ALJ") Timothy S. Snelling. In a June 16, 2010, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

    1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

    2.    The claimant has not engaged in substantial gainful activity since September 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    3.    The claimant has the following medically severe combination of impairments: diabetes, degenerative spondylosis in the cervical spine and lower back pain (20 CFR 404.1520(c) and 416.920(c)).

    4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5.    After careful consideration of the entire record, [the ALJ] find[s] that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she can only bend, squat, crawl, climb and reach frequently and must avoid concentrated and protracted exposure to hazards such as dangerous moving machinery and unprotected heights.

    6.    The claimant is capable of performing past relevant work in housekeeping and cleaning. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

    7.    The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(CAR 17-24). After the Appeals Council declined review on December 5, 2011, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See <u>Saelee v. Chater</u>, 94 F.3d 520, 521

---

process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

3

(9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

Plaintiff argues the ALJ erred by improperly evaluating the medical opinions and evidence, and that given plaintiff's age and her limitations, she should be considered disabled under the grids.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

4

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to the medical opinions here, the ALJ stated:

> As for the opinion evidence, some weight is given to the opinion of consultative examiner Dr. Edwin Swillinger to the extent that it is consistent with the record as a whole (Exhibit 2F). Dr. Swillinger opined that the claimant has no limitations in standing, walking, sitting, and lifting and no postural, manipulative or workplace environmental limitations (Id.). However, I find that the claimant has more limitations than stated in this opinion.
>
> Some weight is given to the opinion of the State agency medical

> consultants to the extent that it is consistent with the record as a whole (Exhibit 3F, 7F). The State agency physicians opined that the claimant can lift 50 pounds occasionally and 25 pounds frequently, sit, stand and/or walk about 6 hours in an 8-hour workday, with normal breaks, is limited to frequent pushing and pulling with her upper extremities, can frequently climb, balance, stoop, kneel, crouch and crawl, is limited in her ability to frequently reach in all directions, including overhead, and should avoid concentrated exposure to extreme cold and hazards such as unprotected heights and moving machinery, but has no visual or communicative limitations (Exhibit 3F). However, I find that the medical evidence, as discussed above, shows that the claimant is less limited than stated in this opinion.
>
> Some weight is given to the opinions of the claimant's treating physician, Dr. S. Tinio, to the extent that it is consistent with the record as a whole (Exhibit 10F/1, 13). In his June 11, 2009 opinion, Dr. Tinio opined that due to her low back pain, her only impairment, the claimant can lift and carry up to 20 pounds frequently but can never carry more than 20 pounds, can sit for 8 hours in an 8-hour workday but can stand and/or walk for 1 hour in an 8-hour workday, can occasionally bend, squat, crawl, climb and reach, and must avoid moderate exposure to being around moving machinery, but has no limitations in activities involving unprotected heights, driving an automobile, exposure to marked changes in temperature and humidity or exposure to dust, fumes and gases, and can handle repetitive activities involving grasping, pushing and pulling of arm controls and fine manipulation with her hands bilaterally (Exhibit 10F/13). In his January 21, 2010 opinion, Dr. Tinio essentially stated the same opinion but opined that the claimant can only lift up to 10 pounds frequently and can never lift over 10 pounds (Exhibit 10F/2). However, I find that the record as a whole, as discussed above, shows that the claimant is less limited than stated in this opinion.

(CAR 23).

The ALJ analyzed the medical evidence as follows:

> During the physical examination by consultative examiner Dr. Edwin Swillinger on January 12, 2009, the claimant had a range of motion that was within normal limits in the cervical and lumbar spine, in the hips, knees, ankles, shoulders, elbows, and wrists (Exhibit 2F/2-3). In addition, straight leg raise testing was normal in the seated and supine positions, and the claimant had no neurological deficits, with a normal muscle bulk and tone, normal motor strength (5/5), normal grip strength (5/5), sensation that was intact and normal deep tendon reflexes (Exhibit 2F/3). While Dr. Swillinger diagnosed the claimant with probable carpal tunnel syndrome bilaterally, this was primarily due to the claimant's report that her hands hurt at night and are sometimes numb during

6

> the day (Exhibit 2F/1) as the physical examination results did not conclusively show that she did have carpal tunnel syndrome. Although the claimant's treating physician opined that she was limited to occasional reaching, he also opined that she can handle repetitive activities involving grasping, pushing and pulling of arm controls and fine manipulation with her hand bilaterally (Exhibit 10F/1, 13).
>
> Further, the claimant's treatment notes show that on March 11, 2009, physical examination of her neck revealed normal results and neurological examination demonstrated that she had normal and symmetric motor strength, sensation and reflexes (Exhibit 4F/3). In addition, her gait has consistently been noted as being steady (Exhibits 1F/2, 9, 4F/2) and musculoskeletal examinations have consistently [been] normal or unremarkable as well (Exhibits 1F/10, 16, 4F, 10F). In fact, although the claimant complained of left shoulder pain on May 17, 2008, she demonstrated a full range of motion in that shoulder upon examination (Exhibit 1F/10).
>
> There is also no indication that her lower back pain is so extreme that it limits her to walking and standing for only 1 hour, as determined by her treating physician, Dr. S. Tonio (Exhibit 10F/1, 13). While her insurance options may be limited, the available medical evidence does not show that the claimant was ever prescribed any medication for lumbar or cervical pain, given suggestions for alternative, non-medical treatment for back pain or referred for further evaluation for her back problems. Moreover, Dr. Tonio diagnosed her with lower back pain, a symptom, and not with any specific medical condition (Id.). The claimant has reported being independent in her ability to do her activities of daily living and her physical mobility was noted as being within normal limits (Exhibit 10F/6, 9).
>
> Although the claimant demonstrated limitations in her grip strength, in sitting, standing, walking and in her ability to lift and carry objects during a physical capacities evaluation performed on December 9, 2009, these findings are not supported by the record as a whole (Exhibit 9F). Moreover, the physical capacities evaluation was performed by a physical therapist, Kim Pastenbach, and not a medical doctor (Exhibit 9F/3). Since a physical therapist is not an acceptable medical source within the regulatory definition, any findings by such a source cannot be used to establish a medically determinable impairment and cannot be relied upon as a medical opinion (20 CFR 404.1513 and 416.913, SSR 06-03p).

(CAR 21-22).

///

///

Plaintiff argues that the reasons given for discounting her treating physician's opinion are insufficient.  Specifically, plaintiff contends the ALJ improperly discounted her treating physician's opinion because it was based on a physical therapist's assessment.  Citing Taylor v. Commissioner of Social Security Administration, 659 F.3d 1228 (9th Cir. 2011), plaintiff argues the physical therapist was part of a treatment team, and the ALJ should have accepted the assessment an acceptable medical source opinion and given appropriate deference thereto.

Defendant contends that the ALJ provided appropriate and sufficient reasons for the way the medical opinions were treated.  In addition, defendant argues that the ALJ properly discounted the physical therapist's assessment.

Contrary to plaintiff's argument, the ALJ did provide sufficient reasons for his treatment of the medical opinions.  The ALJ had contradictory opinions, one from a treating physician and another from an examining physician.  The contradicting examining physician's opinion was based on independent clinical findings gathered from the examination of plaintiff.  To the extent the ALJ found plaintiff more limited in her abilities than the examining physician does not render that finding erroneous.  The ALJ did not outright reject either medical opinion, but determined plaintiff's limitations to be somewhat more limited that the examining physician's opinion but less limiting that the treating physician's opinion.  As the opinions were contradictory, the ALJ had the authority to resolve that conflict.  He did so, setting forth legitimate and specific reasons for his findings, which are supported by the record.  These reasons included plaintiff's relatively normal examination, including plaintiff's full range of motion and normal muscle tone, and no neurological deficits.  In addition, the ALJ noted plaintiff's insurance limitations, but found relatively conservative treatment with no evidence that she was ever prescribed pain medication for her back, nor was there any suggestion for alternative, non-medical treatments or referrals for further evaluations.  The ALJ further noted the lack of an actual diagnosis for her back problems, only the indication that she has back pain.

As to plaintiff's argument that the physical therapist's opinion should have been considered as an acceptable medical source statement, pursuant to Taylor, the undersigned does not find this argument persuasive. The law on this particular issue is unsettled. The Ninth Circuit has held that if a nurse practitioner works closely with a physician, the nurse practitioner's opinion may be considered as part of the team and treated as an acceptable medical source. See Taylor, 659 F.3d at 1234 (citing Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996)). This holding has been limited, and the Ninth Circuit has yet to determine whether it remains good law as it relies on an outdated statute. See Molina v. Astrue, 674 F.3d 1104, 1111n.3 (9th Cir. 2012). Here, however, the opinion plaintiff is arguing should be treated as an acceptable medical source is a physical therapist, not a nurse practitioner. Plaintiff cites to no case, nor has the undersigned found any, where the opinion of an "other" medical source, such as a physical therapist, has been attributed to an "acceptable" medical source. See 20 C.F.R. §§416.902, 416.913. Instead, the holding of these cases has been limited, and other district courts have been conservative in their treatment of nurse practitioners as an acceptable medical source. See e.g., Cruise v. Astrue, No. 6:11-cv-06199-ST, 2012 WL 5037257 (D. Or., Sept. 28, 2012); Davis v. Astrue, No. C 11-1819 PJH, 2012 WL 3011223 (N.D. Cal. Jul. 23, 2012); Johnson v. Colvin, No. 1;12-cv-524-AWI-GSA, 2013 WL 2643305 (E.D. Cal. Jun. 12, 2013). Indeed, as in other cases addressing this issue, there is no evidence in this case that the physical therapist was in fact part of a treatment team. Other than the providers being at the same facility, St. Joseph's Medical Center, and plaintiff's testimony that her treating physician referred her to the physical therapist, there is no indication that the physical therapist was "working closely with, and under the supervision of [a physician], [for] her opinion . . . to be considered that of an 'acceptable medical source.'" Taylor, 659 F.3d at 1234 (citing Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996). Providing a one-time evaluation of plaintiff is not the type of close working relationship between providers the courts have determined meet this limited exception. Therefore, regardless of whether this remains good law, the circumstances here do not qualify, and the ALJ did not err

in limiting the physical therapist's evaluation.  Even if the ALJ erred, and the physical therapist's evaluation should have been treated as an acceptable source weight, as discussed above the ALJ provided sufficient reasons for not accepting all of the limitations the treating physician set forth.

Finally, to the extent plaintiff argues plaintiff should be considered disabled under the grids, this argument is based on the contention that the ALJ erred in his treatment of the treating physician's opinion.  As there was no error in the treatment of the medical opinions, and the ALJ's RFC determination based thereon, the argument that plaintiff should be found disabled as a sedentary worker over the age of 50 is unpersuasive and unsupported.

## IV.  CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 19) be denied;

2. Defendant's cross-motion for summary judgment (Doc. 23) be granted; and

3. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 11, 2013

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE